No. 13883

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

THE STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

JOHNNY MALDONADO,

    Defendant and Appellant.

Appeal from:  District Court of the Thirteenth Judicial,
            District,
            Honorable Robert Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

    Johnny Maldonado, Pro Se, Deer Lodge, Montana

    For Respondent:

    Hon. Mike Greely, Attorney General, Helena, Montana
    Harold F. Hanser, County Attorney, Billings, Montana

    Submitted on briefs

Submitted: November 15, 1977

Decided: APR 12 1978

Filed: APR 12 1978

_Thomas J. Kearney_
            Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant, Johnny Joe Maldonado, appeals from an order of the District Court, Yellowstone County, denying his petition for post-conviction relief.

On September 11, 1970, defendant entered a guilty plea to a charge of second degree assault, a felony under sections 94-602(5) and 94-114, R.C.M. 1947. The district judge deferred imposition of sentence for a period of three years.

On August 25, 1971, the State filed a petition to revoke defendant's deferred imposition of sentence, alleging that during the period of his probation, defendant had been charged with the crime of receiving stolen property, had left the state and absconded from supervision, and had failed to report to his probation officer as required.

At the September 22, 1971, hearing on the petition to revoke, defendant admitted the second and third allegations in the petition, but denied he had been charged with receiving stolen property. The District Court ordered that the terms of the deferred imposition of sentence remain in effect, except that defendant was required to serve six months in the county jail on a work-release program. The court order was modified on November 29, 1971, to provide that defendant serve only weekends in jail.

On December 8, 1972, the State filed a second petition to revoke defendant's deferred imposition of sentence, alleging defendant committed the offenses of burglary and criminal possession of dangerous drugs on October 25, 1972. At the revocation hearing held on January 25, 1973, the State presented evidence that when police responded to a burglary alarm at a local hardware store at about 2:00 a.m., October 25, 1972, defendant was found inside the store with

another individual, near a gun case which was broken and several guns removed. Upon receiving this evidence at the January 25, 1973, revocation hearing, the District Court revoked the originally deferred imposition of sentence on the second degree assault conviction, and sentenced defendant to five years and nine months in the Montana state prison.

On July 25, 1975, after serving approximately one-half of his sentence on the second degree assault charge, defendant was paroled. While still on parole, on April 4, 1976, a Billings police officer arrested defendant in a local bar on a charge of carrying a concealed weapon. The District Court granted the Yellowstone County attorney leave to file an Information, charging defendant with carrying a concealed weapon within the city limits of Billings, Montana, in violation of section 94-8-210, R.C.M. 1947. The county attorney filed a notice to increase punishment pursuant to section 95-1506, R.C.M. 1947, alleging defendant was a prior convicted felon under section 95-1507, R.C.M. 1947, due to his previous conviction for second degree assault.

In his affidavit in support of the Information charging defendant with carrying a concealed weapon, the deputy county attorney alleged that at approximately 12:30 a.m., April 4, 1976, Officer Hatfield of the Billings Police Department was flagged down by an anonymous person and informed that defendant was inside the Empire Bar in Billings, carrying a concealed weapon. Affiant stated Officer Hatfield and Officer Trimbo entered the bar and observed defendant; upon searching defendant the officers discovered and seized a .38 caliber Smith & Wesson pistol with a two inch barrel, which defendant was carrying in a shoulder holster concealed by his brown leather jacket.

-3-

These facts alleged in the affidavit were largely corroborated by defendant himself at his arraignment on the concealed weapon charge. Defendant admitted he was carrying a concealed and loaded .38 caliber Smith & Wesson revolver in a shoulder holster while he was in the Empire Bar. Defendant stated that he understood he was subject, as a persistent felony offender, to increased punishment up to 100 years imprisonment. Defendant pleaded guilty and the District Court sentenced defendant to serve twenty years in the state prison.

On October 12, 1976, defendant filed a petition for post-conviction relief, pursuant to section 95-2601, R.C.M. 1947, in District Court, Yellowstone County. Defendant raises the following issues on his appeal from the District Court's April 26, 1977, order denying post-conviction relief:

1. Did section 95-1507, R.C.M. 1947, the persistent felony offender statute, as applied to defendant, violate constitutional safeguards dealing with ex post facto laws and equal protection?

2. Is section 95-1507 unconstitutional under Article II, Section 28, 1972 Montana Constitution?

3. Did the District Court abuse its discretion in revoking defendant's deferred imposition of sentence on the second degree assault conviction?

4. Did the court's mistaken belief in sentencing that defendant had entered his guilty plea to the second degree assault charge on January 25, 1973 rather than on September 11, 1970, constitute reversible error?

5. Was section 94-8-210, R.C.M. 1947, as in effect when defendant committed the crime of carrying a concealed weapon, an unconstitutionally vague statute?

6. Was defendant sufficiently informed, prior to entering his plea, of the possible sentences he could receive as a persistent felony offender upon conviction of carrying a concealed weapon?

7. Did the District Court abuse its discretion in finding that defendant was not denied effective assistance of counsel?

8. Was the twenty year sentence defendant received so excessive and disproportionate to the offense as to constitute cruel and unusual punishment?

On September 11, 1970, when defendant plead guilty to second degree assault, a felony, Montana's persistent felony offender statute, section 94-4713, R.C.M. 1947, allowed a district judge to sentence a defendant to a maximum sentence of ten years imprisonment for a subsequent felony conviction of carrying a concealed weapon. Section 94-4713, was repealed by the legislature in 1973 and replaced with the present section 95-1507. Defendant committed the carrying of a concealed weapon offense on April 4, 1976, when section 95-1507, was in effect. The District Court judge sentenced defendant to twenty years in the state prison as a persistent felony offender under section 95-1507. Under section 95-1507(2), the maximum penalty for conviction of the felony of carrying a concealed weapon, for one who has "previously been convicted of a felony" is 100 years in the state prison.

Defendant alleges that, because the felony second degree assault conviction occurred prior to the enactment of section 95-1507, the District Court's use of the assault conviction to increase punishment under section 95-1507 on the felony of carrying a concealed weapon charge constituted an ex post facto law. Defendant contends he could be consti-

tutionally sentenced only under section 94-4713, the persistent felony offender statute in effect when he committed the second degree assault.

Defendant misconstrues the constitutional prohibitions against ex post facto laws. Both the United States and Montana Constitutions prohibit the Montana legislature from passing ex post facto laws. Article I, Section 10, United States Constitution; Article II, Section 31, 1972 Montana Constitution. Ex post facto laws are prohibited on the theory no one should be punished for conduct which the law did not give him advance warning was criminal. Section 95-1507, was enacted in 1973 prior to defendant's commission of the carrying a concealed weapon felony in 1976. The law did not punish defendant for past conduct, but merely notified defendant he was subject to increased punishment, if he in the future committed an additional felony crime. In rejecting a claim similar to defendant's, the United States Supreme Court stated:

"Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive * * * . The sentence as a * * * habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Gryger v. Burke, (1948), 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.ed. 1683.

See also: McDonald v. Massachusetts, (1901), 180 U.S. 311, 21 S.Ct. 389, 45 L.ed. 542.

Defendant contends section 95-1507 violates the equal protection and due process clauses of the Fourteenth Amendment because only a minority of repeat felony offenders are prosecuted under the persistent felony offender statute.

-6-

Defendant alleges that section 95-1507 is in general unconstitutionally selectively applied, and was selectively applied in the instant case, due to the county attorney's animosity toward defendant and defendant's counsel. Nothing in the record supports defendant's assertion that he was singled out for persistent felony prosecution due to the prosecutor's feelings of personal enmity. Nor does a showing of selective enforcement of a criminal law, without more, constitute a constitutional violation. "* * * the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" absent an allegation and showing that "* * * the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification * * *" such as sex, or the exercise of the First Amendment right to free speech. Oyler v. Boles, (1962), 368 U.S. 448, 456, 82 S.Ct. 501, 7 L ed 2d 446, 453.

Defendant next claims that, because section 95-1507 subjects repeat felony offenders to potentially stiffer sentences than first time felony offenders, the law violates that portion of Article II, Section 28, 1972 Montana Constitution, which provides that "Full rights are restored by termination of state supervision for any offense against the state." The success of defendant's argument necessarily depends upon whether the reference in Article II, Section 28, to "full rights" includes a "right" of a prior felony offender to not have his prior offense considered, when sentencing him on a subsequent felony.

The transcript of proceedings of the Montana Constitutional Convention clearly indicates the Committee of the Whole, in recommending the Article II, Section 28 clause on restoration of full prisoner's rights, was concerned that no obstacles

prevent the ex-convict from becoming a contributing and participating member of the community. Speaking on behalf of the committee, one delegate stated that the ex-prisoner, no longer under state supervision, " * * * should be entitled to the restoration of all civil and political rights, including the right to vote, hold office, and enter occupations which require state licensing." Vol. 7, Const. Convention Transcript 5550 (remarks of Delegate James). A main concern of the delegates was that ex-convicts not automatically be precluded from practicing state-licensed professions. Vol. 7, Const. Convention Transcript 5624-26 (remarks of Delegates Habedank and Campbell). See also: Miller v. Carter, (7th Cir. 1977), 547 F.2d 1314, 1328-29, aff'd. (1978), ____ U.S. ____, 98 S.Ct. 786, 54 L ed 2d 603.

The "full rights" language of Article II, Section 28 does not include a "right" to be sentenced for a felony without regard to prior felony convictions. Having a prior felony conviction with the potential for increasing punishment on a subsequent felony conviction does not hamper rehabilitation of the ex-convict or diminish his civil or political rights. If the ex-convict obeys the law, as all citizens are required to do, for five years subsequent to his felony conviction or release from prison, the prior felony may not be used to increase punishment under section 95-1507 for a subsequent felony. Rather than involving any civil or political "right", increasing the sentence of a persistent felony offender is entirely consistent with the constitutional mandate that "Laws for the punishment of crime shall be founded on the principles of prevention and reformation.* * *" Article II, Section 28, 1972 Montana Constitution.

"* * * Persistence in crime and failure of
earlier discipline effectively to deter or
reform justify more drastic treatment. * * *
For the determination of sentences, justice
generally requires consideration of more
than the particular acts by which the crime
was committed and that there be taken into
account the circumstances of the offense
together with the character and propensities
of the offender. His past may be taken to
indicate his present purposes and tendencies
and significantly to suggest the period of
restraint and the kind of discipline that
ought to be imposed upon him." Pennsylvania
ex rel. Sullivan v. Ashe, (1937), 302 U.S.
51, 54-55, 58 S.Ct. 59, 82 L.ed. 43.

Defendant also asserts that no proper cause was shown
to revoke the deferred imposition on the second degree
assault charge, and the assault conviction could therefore
not be considered as a prior felony to increase his punish-
ment on the carrying a concealed weapon charge. The facts
adduced at the District Court hearing on the State's second
petition to revoke the deferred sentence show that on
October 25, 1972, at 2:00 a.m., the police apprehended
defendant and another individual inside a hardware store,
where a gun case was broken and several guns removed. The
District Court had ample cause to revoke the deferred imposi-
tion of sentence.

Defendant is not correct in his assertion that the
District Court had no authority after the first revocation
hearing to impose a jail term as an additional condition of
his continued deferred imposition of sentence. Defendant
contends this Court's holding in State v. Drew, (1971), 158
Mont. 214, 490 P.2d 230, established that a term in jail may
never be imposed as a condition of a deferred sentence.
However, this Court in Drew merely stated that a trial judge
may not actually impose a sentence and defer the imposition
of part of that sentence. The district judge may, however,

defer imposition of sentence and make a jail term a condition of probation. "* * * There is a valid distinction under the law in granting a deferred imposition upon conditions, rather than imposing a jail sentence with conditions." State ex rel. Woodbury v. District Court, (1972), 159 Mont. 128, 136, 495 P.2d 1119. See also: State v. Thorsness, (1974), 165 Mont. 321, 528 P.2d 692.

Defendant next contends that his persistent felony offender sentence is invalid because the district judge sentenced him under the misapprehension that defendant plead guilty on January 25, 1973, to second degree assault. Defendant did, however, on September 11, 1970, plead guilty to second degree assault. Although defendant emphasizes that he did not on January 25, 1973, plead guilty to a burglary charge, the fact that he was found by police at 2:00 a.m. in a hardware store where the burglar alarm had sounded and guns had been removed from a broken display case, was sufficient cause to revoke defendant's deferred sentence on the second degree assault conviction and was validly used to increase defendant's punishment for his subsequent felony conviction.

Defendant also asserts that section 94-8-210 the carrying a concealed weapon statute as in effect when he committed the crime, gave prosecutors discretion to charge the transaction as a felony or a misdemeanor, gave no judicial guidelines as to when the charges should be felony or misdemeanor, and therefore, was unconstitutionally vague. Defendants cites Olsen v. Delmore, (1956), 48 Wash.2d 545, 295 P.2d 324, 325, and State v. Pirkey, (1955), 203 Or. 697, 281 P.2d 698, where the Supreme Courts of both Washington and Oregon declared unconstitutional statutes which did not

-10-

distinguish when identical conduct should be charged by prosecutors as felonies or misdemeanors.

In 1976 when defendant was charged as a persistent felony offender, section 94-8-210 provided that a person convicted of carrying a concealed weapon " * * * shall be punished by a fine not exceeding five hundred dollars or by imprisonment in the county jail for a period not exceeding six months, or by both such fine and imprisonment, or may be punished by imprisonment in the state penitentiary for a period not exceeding five years." Defendant contends that because the same offense may be punished as either a felony or a misdemeanor, the rule and rationale of Olsen, Pirkey and similar cases require this Court to rule that section 94-8-210 is unconstitutional.

The defendant in Olsen was convicted under a carrying a concealed weapon statute which contained a penalty clause worded very similarly to the penalty clause of section 94-8-210. The crime in Olsen was "* * * punishable by a fine of not more than five hundred dollars or imprisonment in the county jail for not more than one year or both, or by imprisonment in the penitentiary for not less than one year nor more than ten years." Olsen v. Delmore, 295 P.2d 325. In Washington, the classification of a crime as a felony or a misdemeanor was dependent upon the potential punishment, and not upon the punishment which the offender actually received upon conviction. Crimes punishable by death or imprisonment in the state penitentiary were felonies; crimes punishable by fines of less than $250, or by imprisonment in a county jail for not more than ninety days, were misdemeanors. The vice of the statute in Olsen, and of a similar statute in Pirkey, was that it authorized prosecuting officials to

charge identical conduct by different persons as either a felony or a misdemeanor. This unbridled prosecutorial discretion violates the constitutional guarantee of equal protection of the laws. "* * * the statute itself furnishes no criterion by which to determine when an accused is to be charged with felony, and when with a misdemeanor * * *." (Emphasis added.) State v. Pirkey, 281 P.2d 702.

Although the section 94-8-210 penalty clause in effect when defendant committed the crime was worded similarly to the Washington statute in Olsen, Montana's law does not suffer from the same constitutional infirmity. In Montana, the discretion to classify an offense as a felony or a misdemeanor belongs to the sentencing court and not to the prosecuting official. Except for the limited jurisdictional and statute of limitation purposes of section 94-1-105, R.C.M. 1947, the classification of an offense as a felony or as a misdemeanor depends entirely upon the actual sentence imposed by the trial court upon conviction.

Section 94-2-101(15)(31), in 1975, read:

"(15) 'Felony' means an offense in which the sentence imposed upon conviction is death or imprisonment in the state prison for any term exceeding one (1) year." (Emphasis added.)

"(31) 'Misdemeanor' means an offense in which the sentence imposed upon conviction is imprisonment in the county jail for any term, or fine, or both, or the sentence imposed is imprisonment in the state prison for any term of one year or less." (Emphasis added.)

Where the power to classify a crime as a felony or a misdemeanor is given to the judge, through the sentence he imposes, rather than to the prosecutor, there is no equal protection violation. Gibson v. Dell, (9th Cir. 1971), 443 F.2d 75. See: Daloia v. Rhay (9th Cir. 1958), 252 F.2d 768, 770. The rationale for this distinction was set forth by

-12-

Mr. Justice Black in his dissent in Berra v. United States, (1956), 351 U.S. 131, 140, 76 S.Ct. 685, 100 L.ed. 1013:

> " * * * Of course it is true that under our
> system Congress may vest the judge and jury
> with broad power to say how much punishment
> shall be imposed for a particular offense.
> But it is quite different to vest such powers
> in a prosecuting attorney.  A judge and jury
> act under procedural rules carefully pre-
> scribed to protect the liberty of the indi-
> vidual.  Their judgments and verdicts are
> reached after a public trial in which a defend-
> ant has the right to be represented by an
> attorney.  No such protections are thrown
> around decisions by a prosecuting attorney.* * *"
> 351 U.S. 140.

Nor was the statute unconstitutionally vague because the judge could sentence the offense as either a felony or a misdemeanor, without statutory guidelines as to when each grade of sentence should be imposed.  One of the purposes of the 1973 Montana Criminal Code was to vest wide sentencing discretion in the trial judge who is familiar with the character and past record of the defendant, and with the circumstances of the particular case.  Although the penalty provision of the carrying a concealed weapon statute, as it was in effect when defendant committed the crime, was not artfully phrased, it meant no more than that one found guilty of the section could be sentenced to imprisonment in the state prison for a term not to exceed five years.  The sentencing clause, therefore, was no different from other sections of the criminal code which likewise vest the sentencing judge with the discretion to impose a misdemeanor or a felony sentence, as the circumstances of the case warrant.  See, e.g., section 94-6-104, R.C.M. 1947 (arson sentence not to exceed twenty years imprisonment); section 94-6-204, R.C.M. 1947 (burglary sentence not to exceed ten years imprisonment); section 94-7-202, R.C.M. 1947 (perjury sentence not to exceed ten years imprisonment).

Defendant contends he was not informed that, upon conviction of carrying a concealed weapon, he might have received a misdemeanor rather than a felony sentence. Defendant asserts had he realized that he might have been convicted of only a misdemeanor, he would have stood trial rather than plead guilty.

To be valid, defendant's guilty plea must have been entered voluntarily and understandingly. Boykin v. Alabama, (1969), 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L ed 2d 274; State v. Doty, (1977), ____ Mont. ____, 566 P.2d 1388, 1391, 34 St.Rep. 731. A plea of guilty is invalid as not having been understandingly entered if the defendant was not informed of the maximum potential penalty upon conviction. Tucker v. United States, (5th Cir. 1969), 409 F.2d 1291, 1295. In this case, defendant was properly informed of the maximum potential sentence upon a guilty plea. A guilty plea is not necessarily invalid if a defendant is not informed of minimum penalties upon conviction. Defendant misconstrues Montana law when he states that he did not realize he might have been convicted of a misdemeanor rather than a felony. Defendant could have been convicted at trial in the District Court only of the offense of carrying a concealed weapon. As previously discussed, the offense assumes the character of misdemeanor or felony only after the judge has imposed sentence. A conviction after trial or a conviction due to a guilty plea therefore had no effect upon whether the offense would subsequently be classified as a misdemeanor or a felony, and the failure to inform defendant of the minimum sentence did not affect the voluntariness of his guilty plea.

Defendant next alleges he was denied effective assis-

tance of counsel when he entered his plea of guilty to the charge of carrying a concealed weapon. This Court has stated the standard for evaluating an inadequacy of counsel claim is the "farce and sham test". State v. McElveen, (1975), 168 Mont. 500, 504, 544 P.2d 820; State v. Miller, (1977), ____ Mont. ____, 568 P.2d 130, 34 St.Rep. 838.

In explaining the specifics of this test, this Court has held that to render effective assistance within the requirements of the Sixth Amendment, United States Constitution, and Article II, Section 24, 1972 Montana Constitution, counsel must attempt to "discover all the facts and circumstances of the crime" through "thorough investigation of the persons and events involved in the crime." State v. McElveen, 168 Mont. 506. The representation by counsel must also include adequate preparation and conference with his client. State v. McElveen, 168 Mont. 504, quoting Williams v. Beto, (5th Cir. 1965), 354 F.2d 698, 704. Adequate conference with the client includes advising the client of his rights and eliciting from the client all matters of defense, or ascertaining that there exists no defense. See: Coles v. Peyton, (4th Cir. 1968), 389 F.2d 224, 226, cert.den., 393 U.S. 849, 89 S.Ct. 80, 21 L ed 2d 120 (1968).

Defendant claims that counsel was ineffective because counsel did not attempt to suppress the evidence obtained in a search of defendant, because counsel did not make any investigation to determine the constitutionality of the concealed weapons statute, and because counsel made no investigation as to why defendant was carrying a concealed weapon. The decisions of whether to challenge the constitutionality of a statute or to move to suppress evidence are matters of legal judgment. In this case, we hold the carrying

a concealed weapon statute was constitutional. Defendant's attorney stated in an affidavit that defendant had explained that the police had authority to search defendant as a condition of defendant's parole on the second degree assault charge. Defendant claims he had no criminal intent because the reason he was carrying a concealed weapon was to protect himself from attack in the bar that he was in. Concealing a pistol or revolver on his person within the city limits, however, was sufficient evidence to convict under section 94-8-210. The reasons for defendant's concealing the weapon were in this case irrelevant to the issue of criminal intent, though those reasons might have been a relevant consideration in sentencing.

Defendant's counsel, in an affidavit, swore that he consulted with defendant as to the facts of the case and possible defenses, arranged to take statements from prospective witnesses, had conversations with various persons involved in the case, considered and rejected the possibility of submitting a motion to suppress, determined that there was no sound defense, and finally advised defendant there was almost no chance of success at trial. Defense counsel then plea bargained with the county attorney and advised defendant to enter a guilty plea in exchange for a prosecution request for a twenty year sentence. Subsequent to sentencing, defendant's attorney made a motion to vacate the twenty year sentence, supported by a memorandum of law. The representation of defendant by his attorney was effective within the standards set forth in State v. McElveen, supra.

The final contention of defendant is that the twenty year sentence he received was cruel and unusual punishment proscribed by the Eighth Amendment, United States Constitution,

-16-

and by Article II, Section 22, 1972 Montana Constitution. Defendant contends the sentence is excessive and disproportionate to the crime of carrying a concealed weapon, a crime which he alleges usually brings only a fine, a short jail sentence, or both such fine and jail sentence. Defendant notes that the maximum sentence under section 94-8-210 for the offense of carrying a concealed weapon is five years.

Defendant misconstrues the offense for which he was charged. Although he was arrested and convicted of carrying a concealed weapon, he was sentenced not as a first-time felony violator of the criminal laws, but as a persistent felony offender. It is indisputable that a sentence, though it be within the maximum sentence allowed by statute, may be so excessive and disproprotionate to the circumstances of the offense as to constitute cruel and unusual punishment. Weems v. United States, (1910), 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.ed. 793; O'Neil v. Vermont, (1892), 144 U.S. 323, 12 S.Ct. 693, 36 L.ed. 450 (Field, J., dissenting).

" * * * the Cruel and Unusual Punishment Clause * * * proscribes punishment grossly disproportionate to the severity of the crime* * * ." Ingraham v. Wright, (1977), 430 U.S. 651, 667, 97 S.Ct. 1401, 51 L ed 2d 711, 727, 728.

Mindful of this limitation, we note, however " * * * the general rule that a sentence within the maximum authorized by statute is not cruel and unusual punishment." State v. Karahthos, (1972), 158 Mont. 461, 468, 493 P.2d 326.

The twenty year sentence which defendant received was well within the one hundred year maximum sentence authorized by section 95-1507, the persistent felony offender statute under which defendant was sentenced. The punishment proscribed was not grossly disproportionate to the severity of the

offense. Though the maximum penalty for the first felony offense of carrying a concealed weapon is five years imprisonment, defendant had previously been convicted of another felony. Persistent felony offender statutes " * * * prescribe such penalties as may be deemed appropriate in view of the nature of the offense and the character of the offender, taking in view his past conduct * * * taking into consideration past offenses committed by the accused as a circumstance of aggravation * * * ." Carlesi v. New York, (1914), 233 U.S. 51, 59, 34 S.Ct. 576, 58 L.ed. 843, 849.

In this case, defendant's previous felony conviction was for second degree assault, a violent crime against another human being. Defendant's second felony conviction was for carrying a concealed weapon in a shoulder holster concealed by a leather jacket. The concealed weapon was a .38 caliber pistol with a two inch barrel, a weapon which if used on another individual could likely cause serious bodily injury or death. Defendant committed the carrying a concealed weapon offense less than nine months after being paroled on the felony assault crime. Given these circumstances, we cannot say the twenty year sentence was so grossly disproportionate to the severity of the crime as to constitute cruel and unusual punishment.

The order of the District Court denying defendant's petition for post-conviction relief is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

-18-