(Nos. 53754, 53778, 53803 cons.—■■■■■

THE PEOPLE *ex rel.* BERNARD CAREY, State's Attorney, Petitioner, v. JAMES J. CHRASTKA, Judge, *et al.,* Respondents.—THE PEOPLE *ex rel.* BERNARD CAREY, State's Attorney, Petitioner, v. MILTON S. WHARTON, Judge, *et al.,* Respondents.—THE PEOPLE *ex rel.* BERNARD CAREY, State's Attorney, Petitioner, v. EDWARD H. MARSALEK, Judge, *et al.,* Respondents.

*Opinion filed December 1, 1980.*

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Lawrence H. Spector and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (John E. Horn, Assistant Public Defender, of counsel), for respondents.

Harry F. Swanger, of St. Louis (Ross Briggs and Joel Green, of counsel), for *amicus curiae* Illinois Collaboration on Youth.

Steven Lubet and Harvey Grossman, of Chicago, for *amicus curiae* the Roger Baldwin Foundation of the American Civil Liberties Union.

Francis X. Grossi, Jr., and H. Elizabeth Kelley, of Katten, Muchin, Zavis, Pearl & Galler, of Chicago (Kathleen C. Yannias, of counsel), for *amici curiae* John Howard Association and Chicago Law Enforcement Study Group.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

These are three consolidated cases in which judges of the circuit court of Cook County held unconstitutional section 5—12 of the Juvenile Court Act (Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12) and denied the State's petitions to proceed thereunder. We granted the State's petitions for leave to file original petitions for writs of *mandamus*. (See 73 Ill. 2d R. 381; Ill. Const. 1970, art. VI, sec. 4(a).) For the reasons which follow, the petitions are granted, and the writs shall issue.

On October 31, 1979, section 1 of Public Act 81—1104 became law and simultaneously went into effect.

The law, which added section 5—12 to the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—1 *et seq.*) is commonly referred to as the Habitual Juvenile Offender Act and provides as follows:

"(a) Any minor having been twice adjudicated a delinquent minor for offenses which, had he been prosecuted as an adult, would have been felonies under the laws of this State, and who is thereafter adjudicated a delinquent minor for a third time shall be adjudged an Habitual Juvenile Offender where:

1. the third adjudication is for an offense occurring after adjudication on the second; and

2. the second adjudication was for an offense occurring after adjudication on the first; and

3. the third offense occurred after January 1, 1980; and

4. the third offense was based upon the commission of or attempted commission of the following offenses: murder, voluntary or involuntary manslaughter; rape or deviate sexual assault; aggravated or heinous battery involving permanent disability or disfigurement or great bodily harm to the victim; burglary of a home or other residence intended for use as a temporary or permanent dwelling place for human beings; home invasion; robbery or armed robbery; or aggravated arson.

Any minor adjudged an Habitual Juvenile Offender shall be committed to the Department of Corrections until his 21st birthday, without possibility of parole, furlough, or non-emergency authorized absence from confinement of any sort. Provided, however, that the minor shall be entitled to earn one day of good conduct credit for each day served as reductions against the period of his confinement. Such good conduct credits shall be earned or revoked according to the procedures applicable to the allowance and revocation of good conduct credit for adult prisoners serving determinate sentences for felonies.

For purposes of determining good conduct credit commitment as an Habitual Juvenile Offender shall be considered a determinate commitment, and the difference between the date of commitment and the minor's 21st birthday shall be considered the determinate period of his confinement.

Any minor prosecuted as an Habitual Juvenile Offender shall have a right to trial by jury.

Nothing in this section shall preclude the States Attorney from seeking to prosecute a minor as an adult as an alternative to prosecution as an habitual juvenile offender.

A continuance under supervision authorized by Section 4—7 of this Act shall not be permitted under this section.

(b) Notice to Minor. The State shall serve upon the minor written notice of intention to prosecute under the provisions of this section simultaneously with the filing of any delinquency petition, adjudication upon which would mandate the minor's disposition as an Habitual Juvenile Offender.

Trial on such petition shall be by jury unless the minor demands, in open court and with advice of counsel, a trial by the court without jury.

(c) Petition and Procedures. A notice to seek adjudication as an Habitual Juvenile Offender shall be filed only by the State's Attorney.

The petition upon which such Habitual Juvenile Offender notice is based shall contain the information and averments required for all other delinquency petitions filed under this Act and its service shall be according to the provisions of this Act. Except as otherwise provided herein, the provisions of the Juvenile Court Act concerning delinquency proceedings generally shall be applicable to Habitual Juvenile Offender proceedings.

No prior adjudication shall be alleged in the petition, and no evidence or other disclosure of such adjudication shall be presented to the court or jury during any adjudicatory hearing provided for under this section, unless otherwise permitted by the issues properly raised in such hearing. In the event the minor who is the subject of these proceedings elects to testify on his own behalf, it shall be competent to introduce evidence, for purposes of impeachment, that he has previously been adjudicated a delinquent minor upon facts which, had he been tried as an adult, would have resulted in his conviction of a felony. Introduction of such evidence shall be according to the rules and procedures applicable to the impeachment of an adult defendant by prior conviction.

After an admission of the facts in the petition or adjudication of delinquency, the State's Attorney may file with the court a verified written statement signed by the State's Attorney concerning any former adjudication of an offense set forth in Section (a) hereof which offense would have been a felony had the minor been tried as an adult.

The court shall then cause the minor to be brought before it; shall inform him of the allegations of the statement so filed, and of his right to a hearing before the court on the issue of such former adjudication and of his right to counsel at such hearing; and unless the minor admits such adjudication, the court shall hear and determine such issue, and shall make a written finding thereon.

A duly authenticated copy of the record of any such alleged former adjudication shall be prima facie evidence of such former adjudication.

Any claim that a previous adjudication offered by the State's Attorney is not a former adjudication of an offense which, had the minor been prosecuted as an adult, would have resulted in his conviction of a felony, is waived unless duly raised at the hearing on such adjudication, or unless the State's Attorney's proof shows that such prior adjudication was not based upon proof of what would have been a felony.

If the court finds that the prerequisites established in Section (a) hereof have been proven, it shall adjudicate the minor an Habitual Juvenile Offender and commit him to the Department of Corrections until his 21st birthday, without possibility of parole, furlough, or non-emergency authorized absence." Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12.

We initially reject respondents' contention that *mandamus* does not lie to review the rulings of the circuit court judges in these cases. This court has previously utilized *mandamus* as a means for directing a circuit court judge to conduct a hearing which he felt should not be held because of alleged constitutional defects in the statute authorizing the hearing. (*People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 544.) Additionally, we have entertained petitions for writs of *mandamus* where issues of considerable importance to the administration of justice

are presented even though all criteria for issuance of the writ are not met. (*People ex rel. Carey v. White* (1976), 65 Ill. 2d 193, 197.) We are also advised that at least three judges of the circuit court of Cook County have upheld the act now under attack, and the resulting conflict in opinion among the judges of that court further advises that we entertain this petition. *People ex rel. Carey v. Covelli* (1975), 61 Ill. 2d 394, 401.

The first of many alleged constitutional defects in the Act is that it affords inadequate recognition to the right to trial by jury. The alleged defect in the Act is its failure to require that trial by jury be afforded at the proceedings which resulted in the two prior adjudications upon which application of the Act is predicated. Respondents cite *Baldasar v. Illinois* (1980), 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585, by analogy.

The right to trial by jury is not, as a general proposition, constitutionally required in juvenile proceedings (*McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976; *In re Fucini* (1970), 44 Ill. 2d 305), and respondents do not argue to the contrary. Given the absence of a constitutional requirement that trial by jury be afforded in all juvenile proceedings, we hold that the legislature has afforded sufficient recognition to the right by allowing trial by jury when the individual is prosecuted as an habitual juvenile offender. The proceedings which result in the two predicate adjudications are, considering the purposes of the juvenile court system, rehabilitative in nature, and the full panoply of constitutional procedural safeguards need not be afforded. Proceedings under the Act, by contrast, result in a disposition, determinate confinement, which has as its purpose the protection of society, in addition to the rehabilitation of the individual. By allowing trial by jury in this instance, the legislature has acknowledged the punitive aspect of the Act. We do not believe, however, that the Act is constitu-

tionally flawed simply because it does not require that trial by jury have been afforded at the two predicate adjudications. These predicate adjudications do not themselves authorize disposition under the Act but are relied upon, in effect, as matters in aggravation, and the absence of trial by jury at these two predicate adjudications in no way affects their reliability as evidence of criminal propensity. Indeed, this was the basis of the court's decision in *McKeiver*, wherein it held that trial by jury is not "a necessary component of accurate factfinding." (*McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 543, 29 L. Ed. 2d 647, 660, 91 S. Ct. 1976, 1985.) For this reason, we find that *Baldasar v. Illinois* (1980), 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585, does not support respondents' position. The court there held that uncounseled misdemeanor convictions could not be relied upon as a basis for imposing enhanced criminal penalties, and the basis of the court's decision was its conclusion that the prior convictions were not reliable indicia of criminal propensity because of the absence of counsel. The element of unreliability is not present here. Predicate adjudications may well have been the result of the findings of a judge rather than a jury, but that alone does not render the prior adjudications unreliable. In either case counsel would have been present unless waived.

We also reject respondents' contention that the Act violates due process because it allows the question of a prior adjudication to be tried by the court rather than a jury. (See Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12(c).) The question of a prior adjudication under an habitual offender law relates solely to matters in aggravation (*People v. Lawrence* (1945), 390 Ill. 499, 504-05; *People v. Atkinson* (1941), 376 Ill. 623, 625) and is therefore susceptible to resolution by the court.

On a point related to the question of the right to trial by jury, respondents argue that the concept of funda-

mental fairness embodied in the due process clause is violated on the ground that the filing of a petition to proceed under the Act, as well as the impeachment usage of prior adjudications (see Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12(c)), will improperly apprise a jury of those adjudications and potentially influence the jury's determination of whether the third offense required for disposition under the Act has been committed. As to the question of whether the filing of a petition will prejudice the individual, our reading of the Act convinces us that the prejudice feared will not result if the provisions of the Act are properly applied. The Act explicitly provides, "No prior adjudication shall be alleged in the petition ***." (Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12(c).) We do not believe it reasonable to assume that a juror would realize that the filing of the petition itself indicates the existence of prior adjudications; the possibility of prejudice in such a situation is highly speculative. To the extent that an occasional juror may know of the purpose of such a petition, the juror's ability to remain impartial could be tested by effective *voir dire* examination, and, if desired, a peremptory challenge of that juror could be exercised. We note, however, that a challenge for cause on due process grounds is not available since the court in *Spencer v. Texas* (1967), 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648, upheld a recidivist statute which allowed a jury trying a pending charge to hear evidence of past convictions, not for impeachment purposes, but for the purpose of proving that the particular individual before the court fell within the operation of the recidivist statute, so long as the jury was informed of the limited purpose of the statute.

As to the question of whether the individual may be prejudiced by the impeachment usage of prior adjudications, we find no merit to respondents' argument. We acknowledge that the accused's credibility will be damaged if he chooses to testify and the prosecution introduces

evidence of the prior adjudications in impeachment, but this is the purpose of impeachment regardless of the context in which it is done and the consequences that result. It is improper prejudice with which we are concerned, and if the Act is correctly applied, this will not result. The Act is carefully drafted to avoid unfair prejudice and specifically provides that "no evidence or other disclosure of such adjudication shall be presented to the court or jury during any adjudicatory hearing provided for under this section, unless otherwise permitted by the issues properly raised in such hearing. In the event the minor who is the subject of these proceedings elects to testify on his own behalf, it shall be competent to introduce evidence, for purposes of impeachment, that he has previously been adjudicated a delinquent minor upon facts which, had he been tried as an adult, would have resulted in his conviction of a felony. Introduction of such evidence shall be according to the rules and procedures applicable to the impeachment of an adult defendant by prior conviction." (Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12(c).) By providing these safeguards, the Act actually goes beyond those required by the United States Supreme Court in *Spencer.*

The argument that the Act is an *ex post facto* law, because adjudications occurring prior to the effective date of the Act are considered in aggravation, is an argument that is foreclosed by the decisions of this court and the United States Supreme Court (*Gryger v. Burke* (1948), 334 U.S. 728, 732, 92 L. Ed. 1683, 1687, 68 S. Ct. 1256, 1258; *People v. Turner* (1947), 396 Ill. 221, 223). We also reject the notion that the Act violates *ex post facto* prohibitions by assigning punitive consequences to prior juvenile adjudications. The Act does not purport to transform the prior adjudications into criminal convictions or to impose sanctions for such a prior adjudication where none existed previously. The Act only allows con-

sideration of prior adjudications for the purpose of establishing matters in aggravation to support the disposition authorized by the Act for a third serious offense. (*People v. Hanke* (1945), 389 Ill. 602, 604.) Such a limited, albeit significant, usage of prior adjudications does not violate *ex post facto* prohibitions.

It is also argued that the Act violates due process because it gives prosecutors unbridled discretion in determining whether an individual will be prosecuted under the Act. We do not agree. A cursory analysis of the Act reveals ample guidelines limiting the prosecutor's ability to petition for disposition under the Act. Most significantly, disposition under the Act is conditioned upon two prior adjudications and an adjudication of one of several specified offenses. Once the factual predicate is established, the prosecutor may petition the circuit court for disposition under the Act or seek to prosecute the individual as an adult. (Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12(a).) The discretion to make this type of decision is inherent in the prosecutor and, being limited by statutory guidelines, is not subject to attack. *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 540-43; see also *People v. Sprinkle* (1974), 56 Ill. 2d 257, *cert. denied* (1974), 417 U.S. 935, 41 L. Ed. 2d 239, 94 S. Ct. 2650; *People v. Handley* (1972), 51 Ill. 2d 229; *People v. Bombacino* (1972), 51 Ill. 2d 17.

The last argument of respondents in which they allege a violation of due process is that the Act creates an irrebuttable and irrational presumption that an individual subject to the Act should be confined until the age of 21 years without regard to age, seriousness of the offense, or other potentially mitigating circumstances. This argument is closely related to, and will be considered with, respondents' separation of powers argument in which it is claimed that the Act unconstitutionally usurps the function of the judiciary in imposing sentence, as well as the argument

that the Act violates the Illinois Constitution by failing to require consideration of the seriousness of the offense and the objective of restoring the individual to useful citizenship (Ill. Const. 1970, art. I, sec. 11). We hold that the constitutional provisions allegedly implicated are not violated simply because the Act mandates confinement to the age of 21.

It is indisputable that the legislature has the authority to define offenses against the People and to determine sentences, and this authority, by definition, enables the legislature to establish minimum sentences. Such legislative action necessarily limits the inquiry and function of the judiciary in imposing sentences, but this alone does not render the legislation violative of the constitutional provisions upon which respondents rely. Any resulting diminution of the judiciary's role is adequately remedied by the legislature's clear and comprehensive treatment of the subject, and we cannot say that the means chosen by the legislature is not " '*** reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' " (*People v. Bradley* (1980), 79 Ill. 2d 410, 417, quoting *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 159.) Under the Act, the court is dealing with a juvenile who has allegedly committed three offenses within what is necessarily a short period of time. Significantly, the two predicate adjudications afforded the juvenile the opportunity to have a hearing at which he *could* present mitigating evidence and at which the trial judge *could* exercise his discretion in determining the appropriate disposition. Additionally, the two predicate adjudications must have been for offenses which would have been felonies if the individual were prosecuted as an adult (Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12(a)), and the third offense must be of a particularly serious nature to warrant the disposition authorized by the Act (Ill. Rev.

Stat., 1979 Supp., ch. 37, par. 705–12(a)(4)). The legislature could legitimately conclude that an individual who has committed three such offenses has benefited little from the rehabilitative measures of the juvenile court system and exhibits little prospect for restoration to meaningful citizenship within that system as it had heretofore existed. The rehabilitative purposes of the system are not completely forsaken, but after the commission by an individual of a third serious offense, the interest of society in being protected from criminal conduct is given additional consideration. We consider it to be entirely reasonable and constitutionally permissible for the legislature to so provide and to authorize the disposition specified in the legislative scheme it has developed.

We also find no violation of equal protection principles. The apparent predominant purpose of the Act is to protect society from an individual who, having committed three serious offenses, would appear to have gained little from the rehabilitative measures of the juvenile court system. In furtherance of this purpose, the legislature has determined that an individual who is subject to the Act shall be confined until the age of 21. As a result, an habitual juvenile offender may be confined longer than one who is older, and it is alleged that this disparity in treatment adversely affects a juvenile's fundamental interest in.liberty and is not justified by any compelling interest. We do not agree with either the suggested analysis or conclusion.

First, we question whether the general liberty interest of the individual respondents requires that petitioners demonstrate a compelling interest justifying the disparity in terms of confinement among juveniles prosecuted under the Act. The cases relied upon by one *amicus* in seeking to invoke a strict standard of review do not support its claim that a compelling interest must be demonstrated here, for they involved specifically identifiable fundamental interests. See, *e.g., Harper v. Virginia Board of Elections*

(1966), 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079 (voting); *Skinner v. Oklahoma ex rel. Williamson* (1942), 316 U.S. 535, 86 L. Ed. 1655, 62 S. Ct. 1110 (procreation).

In any event, we believe that the interest in protecting society from the habitual juvenile offender has, through experience, proved to be as compelling as the interest in protecting society from the habitual adult offender, and the broad authority of State legislatures to deal with adult recidivists is well recognized (*Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133; *Spencer v. Texas* (1967), 385 U.S. 554, 559-60, 17 L. Ed. 2d 606, 611, 87 S. Ct. 648, 651). We do not believe that the fortuitous disparity of the terms of confinement of habitual juvenile offenders which results from the variance in age of such individuals serves to invalidate the means chosen to effectuate the purpose of the Act. "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." (*Williams v. Illinois* (1970), 399 U.S. 235, 243, 26 L. Ed. 2d 586, 594, 90 S. Ct. 2018, 2023.) And as stated in *Skinner v. Oklahoma ex rel. Williamson* (1942), 316 U.S. 535, 539-40, 86 L. Ed. 1655, 1659, 62 S. Ct. 1110, 1112, "Under our constitutional system the States in determining the reach and scope of particular legislation need not provide 'abstract symmetry.' *Patsone v. Pennsylvania,* 232 U.S. 138, 144. They may mark and set apart the classes and types of problems according to the needs and as dictated or suggested by experience."

Finally, we believe that the cruel and unusual punishment argument offered by one *amicus* is foreclosed by the recent decision of the United States Supreme Court in *Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133. State legislatures have traditionally been allowed wide latitude in setting penalties for State

crimes (*Williams v. Illinois* (1970), 399 U.S. 235, 241, 26 L. Ed. 2d 586, 593, 90 S. Ct. 2018, 2022), and we do not believe that the disposition authorized here rises to the level of cruel and unusual punishment by any stretch of the imagination.

For the foregoing reasons, a writ of *mandamus* shall issue directing the respondent judges to vacate their orders declaring section 5—12 of the Juvenile Court Act unconstitutional and denying the State's petitions to proceed under that section, and to allow said petitions and proceed accordingly.

*Writs awarded.*