**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lyle L. NILSON, Defendant and Appellant.**

No. 14528.

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 1984.

Decided March 13, 1985.

Craig M. Eichstadt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

David L. Braun of Gors, Braun & Carlon, Pierre, for defendant and appellant.

WUEST, Acting Justice.

This is an appeal from a judgment of conviction for driving while under the influence (DWI) of an alcoholic beverage, in violation of SDCL 32–23–1, and with having two prior convictions for DWI within the preceding five years, in violation of SDCL 32–23–4.1. We affirm.

The facts relevant to this appeal are undisputed. On September 6, 1979, appellant was convicted of DWI in Stanley County, South Dakota. At the time of these convictions, SDCL 32–23–4.1 provided that they could be used for a period of four years in order to enhance punishment for a subsequent DWI offense. Effective July 1, 1983, our legislature amended SDCL 32–23–4.1 and increased the four-year enhancement provision to five years. The trial court relied upon the amended version of SDCL 32–23–4.1, finding appellant guilty of a third offense of DWI, although the five-year enhancement provision was not in effect at the time of his two prior convictions.

Appellant was sentenced to eighteen months in the state penitentiary.

Appellant contends that the trial court erred as a matter of law when it found him guilty of a third DWI offense. He argues that the trial court's reliance on the amended version of SDCL 32-23-4.1 constitutes a retroactive application of the statute, and is therefore a violation of Article I, Section 10 of the United States Constitution and Article VI, Section 12 of the South Dakota Constitution, which prohibit the adoption of ex post facto laws. Further, appellant alleges that the guilty pleas entered at the time of his first and second DWI convictions were rendered involuntary because, at the time they were entered, the trial court informed him that they could be used for enhancement purposes for four years. We disagree.

In *State v. Rollinger*, 314 N.W.2d 871, 872 (S.D.1982), a case closely analogous to the present appeal, the appellant argued that the trial court violated the constitutional prohibition of ex post facto laws by including a 1975 order of suspension of imposition of sentence as a prior felony when sentencing her as an habitual offender. This court affirmed the trial court's decision, citing a similar habitual offender appeal in which the United States Supreme Court held:

> Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the [habitual offender] Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one. (citations omitted)

*Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683, 1687 (1948). *See also McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901);

*Carter v. State*, 625 P.2d 313 (Alaska App. 1981); *Danks v. State*, 619 P.2d 720 (Alaska 1980); *State v. Pendergraft*, 124 Ariz. 449, 604 P.2d 1160 (App.1979); *State v. Polson*, 93 Idaho 912, 478 P.2d 292 (1970); *People ex rel. Carey v. Chrastka*, 83 Ill.2d 67, 46 Ill.Dec. 156, 413 N.E.2d 1269 (1980); *Collins v. State*, 275 Ind. 86, 415 N.E.2d 46 (1981); *Sayles v. Com.*, 373 Mass. 856, 367 N.E.2d 833 (1977); *State v. Maldonado*, 176 Mont. 322, 578 P.2d 296 (1978); and *State v. Phillips*, 154 N.J.Super. 112, 380 A.2d 1197 (1977).

In *State v. Phillips, supra*, the court addressed the very issue we face here, stating:

> Subsequent offender provisions, such as the one in effect here, do not undertake to punish again for the prior offenses. The prior offense merely provides a background to be considered in sentencing for a subsequent offense. The gravity of the punishment is increased by the persistence of a defendant in the unlawful conduct—conduct which brings him into a class established by law as deserving and requiring a more severe punishment and restraint than he would otherwise receive. (citations omitted)

> The ground upon which these statutory provisions is bottomed is that punishment is imposed for the [current] offense only, and that in determining the amount and nature of the penalty to be inflicted the Legislature may require the court to take into consideration the recidivous nature of defendant's conduct.

*Id.*, 380 A.2d at 1200-01.

In *State v. DeMarsche*, 68 S.D. 250, 254-55, 1 N.W.2d 67, 69 (1941), this court adopted a similar rationale regarding the punishment of habitual offenders, stating that our habitual offender statute "does not create a new offense, but merely prescribes a punishment for the subsequent offense which in the discretion of the court may be made more severe than the punishment provided for the prior offenses." This rationale is just as applicable in the present context, and we take this opportunity to adopt it herein. It follows

that appellant's contention that his guilty pleas to the prior DWI convictions were involuntary is without merit.

Accordingly, the trial court's judgment is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

## CHRONOLOGY

| | |
|---|---|
| September 6, 1979 | Appellant convicted D.W.I., Stanley County. |
| July 7, 1982 | Appellant convicted D.W.I., Hughes County. |
| July 1, 1983 | SDCL 32–23–4.1 amended to five-year limit. |
| January 23, 1984 | Appellant convicted D.W.I., Hughes County. |

## INESCAPABLE CONCLUSION

It was four years and approximately four and one-half months from the 1979 to the 1984 conviction. The Hughes County conviction in 1984 clearly falls outside the four-year enhancement provision. Thus, the trial court retroactively applied the amended five-year enhancement provision. This conclusion is inescapable.

## RETROACTIVE APPLICATION IS EX POST FACTO

As a matter of law, the trial court erred in retroactively applying the statute to include the 1984 Hughes County conviction. The United States Supreme Court established a two-prong test in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), concerning ex post facto statutes and application. First, a statute "must be retrospective, that is, it must apply to events occurring before its enactment ...." *Id.*, 450 U.S. at 29, 101 S.Ct. at 964. Secondly, the statute "must disadvantage the offender affected by it." *Id.* Both prongs are here met as the amended five-year version of SDCL 32–23–4.1 was used to enhance the charge and punishment against appellant.

At the time of the two prior convictions (1979 and 1982), the four-year limitation applied. If the amended version of SDCL 32–23–4.1 is applied to the 1984 conviction and the facts of this appeal, the amended statute has absolutely changed the legal consequences of appellant's 1979 and 1982 convictions. Instead of the four-year limitation applying (in effect at that time), a five-year limitation is applied (not in effect at that time). Is appellant disadvantaged? Under the five-year application, South Dakota uses the 1979 Stanley County conviction as a platform to additionally punish. By employing this tactic, the third conviction (January 23, 1984) is a Class 6 felony. *See* SDCL 32–23–4. Conversely, if the four-year limitation is applied, i.e., the law in existence when appellant received his first two D.W.I. convictions, appellant may be sentenced only under a Class 1 misdemeanor. *See* SDCL 32–23–3. Appellant now labors under a sentence to prison for 18 months which has been stayed pending appeal. Therefore, the application of the law in this case is of extreme importance to his rights and his liberty.

Forbidding the type of application, such as we see here, the highest Court in this land disapproved because such

> applied ... not only to prisoners sentenced for crimes committed since its enactment ..., but also to all other prisoners, including petitioner, whose offenses took place before that date.

*Weaver*, 450 U.S. at 27, 101 S.Ct. at 963 (footnote omitted). In effect, the trial court created an unconstitutional ex post facto law by applying the amended statute (five-year statute). There is nothing to suggest that the South Dakota Legislature intended that SDCL 32–23–4.1, the five-year amended statute, should be applied retroactively. Why is it that the majority opinion and the State of South Dakota believe that some right inures to the state to interpret this amendment to be retroactive? If this amended statute was to be retroactive, it should have said so. A fundamental rule of statutory construction is that statutes must be construed as having only a prospective operation unless the purpose

and intention of the legislature makes it clearly appear that the statutes are to be given a retroactive effect. In *In re Estate of Scott*, 81 S.D. 231, 234, 133 N.W.2d 1, 3 (1965), we expressed:

"It is always to be presumed that a law was intended, as its legitimate office, to furnish a rule of future action to be applied to cases arising subsequent to its enactment. A law is never to have retroactive effect unless its express letter or clearly manifested intention requires that it should have such effect. If all its language can be satisfied by giving it prospective operation, it should have such operation only." (Citation omitted.)

*See also, Matter of Adams*, 329 N.W.2d 882, 884 (S.D.1983).

### OLD–FASHIONED DIRTY POOL

I now address what I consider to be the most important reason for my refusal to join in affirming the trial court's decision. I call it "dirty pool" on the part of the State and would estop the State from staining the criminal jurisprudence in our courts of this state. Without quoting the entire text of the colloquy between the court and the appellant in his September 6, 1979 Stanley County conviction, suffice it to say that the court advised appellant of his rights including this statement: "[A]nd if you are convicted three times within a four year period of driving while intoxicated, the offense then becomes a felony and the maximum penalty is two years in the State Penitentiary...." In Hughes County on July 7, 1982, the court, once again while advising appellant of his rights, expressed: "Mr. Nilson, I want to tell you also that if you are convicted three times in a four year period for this offense, it then becomes a felony and the maximum penalty then is two years...." In both instances, appellant entered a plea of guilty. It becomes very obvious that the trial court was extremely careful in advising appellant of the four-year enhancement statute prior to accepting appellant's two pleas of guilty to the two prior D.W.I. charges. At the time of the sentence of the second D.W.I., in addition to those remarks which I have cast in quotes above, the trial court clearly recognized that it was acting under the four-year statute. For, after receiving appellant's guilty plea, the trial court stated:

Mr. Nilson, I think you were here when I talked to the other individual that had been sentenced prior—previously for DWI and I just—you have got to know that the next time you get convicted of this *if it is within the next year*, that I am going to send you to the Penitentiary for two years.... (Emphasis supplied.)

I take the position that any defendant in a criminal case has the right to rely upon the statements of His Honor when he is in that tender moment of deciding to enter a plea of guilty or not. His Honor is elevated on a bench and represents the last word of Legal Authority. His Honor is the epitome of the law to the defendant and he has every right in the world to believe that what His Honor tells him is the Gospel, so far as the Law is concerned. In this case, I find this to be hypercrucial for the defendant (now appellant here) was unrepresented by counsel. Therefore, we have a situation where a man is unrepresented by counsel and is clearly told by the trial judge as to the law which applies to him. Now, he will be told by no less than the highest Court of this state that when he entered his two pleas, His Honor was really not telling him the law and that he really could not believe what His Honor told him. From the wellspring of my sense of fairness, I cannot countenance the blessing of such a procedure as this. It violates all sense of fair play. In *State v. Olesen*, 331 N.W.2d 75, 77 (S.D.1983), this Court held that it was not necessary that the court, prior to accepting a guilty plea, inform the defendant that he may be subject to enhanced punishment if he commits another crime. The two first offenses here were pre-*Olesen* and the trial court in the Sixth Judicial Circuit was apparently acting in an abundance of caution. However, once the trial court undertook to advise the defendant of the punishment, and the defendant then acted upon the advice and information of the trial judge, the defendant had every

right in the world to rely upon that information and advice in entering his plea. Are we to construe that the trial court's advice was pre-*Olesen* and simply incorrect or a slip of the tongue? Or do we probe more deeply and reflect that the judge was then and there canvassing the matter with the accused and was making sure that the accused's plea was free and intelligent before the accused entered his plea? Accused in the first two cases, now appellant here, was entitled to know the nature and consequences of his plea. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Spirit Track v. State,* 272 N.W.2d 803 (S.D.1978); *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198 (1970).